

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMR
F. # 2018R01374

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2024

By ECF & Email

The Honorable William F. Kuntz II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Arcelia Hernandez-Velazquez
      Criminal Docket No. 19-306 (S-2) (WFK)

Dear Judge Kuntz:

  The government respectfully submits this letter in advance of defendant Arcelia Hernandez-Velazquez's sentencing, scheduled for November 21, 2024 at 10:00 a.m. On April 25, 2023, the defendant pled guilty before Your Honor to a Mann Act Violation, in violation of Title 18, United States Code, Section 2421(a). As set forth below, a sentence within the U.S. Sentencing Guidelines ("Guidelines") range estimated in the parties' plea agreement of 78 to 97 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing.

I. Factual Background

  A. The Offense Conduct

  The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report prepared by the United States Probation Department on December 20, 2023, to which the government has no objection. See United States Probation Department ("Probation") Presentence Investigation Report dated December 20, 2023 ("PSR").

  Between approximately 2001 and 2019, the defendant and her brothers Ernesto, Hugo and Giovanni Hernandez-Velazquez ran the Hernandez-Velazquez Trafficking Organization, a family organization based in Mexico. PSR ¶¶ 6–48. Ernesto, Hugo and Giovanni lured young women from Mexico into romantic relationships through false promises of love and support, and then used force, fraud and coercion to cause those victims—including Jane Does #1 through #6—to engage in prostitution in the United States. PSR ¶ 7. Victims were

taken to the family home in Tenancingo, Mexico, where they were often not allowed to leave the home and not allowed to contact their families.  PSR ¶ 7.  The victims were pressured to travel to the United States with promises of a better life.  PSR ¶ 7.  Once smuggled into the United States, members of the organization arranged to transport and did transport the young women to engage in prostitution at brothels and other locations in various states, including but not limited to Alabama, Connecticut, Florida, Georgia, Louisiana, Maryland, Massachusetts, Mississippi, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Tennessee and Virginia.  PSR ¶¶ 7, 23.

Ernesto, Hugo and Giovanni were extraordinarily violent with their victims.  PSR ¶¶ 15-37.  For example, Hugo physically beat Jane Does #1 and #5, and forced both of them to have abortions so that they could continue working in prostitution.  PSR ¶¶ 16, 28, 30.  On one occasion, while Jane Doe #1 was in the United States, Hugo and Giovanni threatened her by going to her mother's house and taking her son for a day.  PSR ¶ 18.  And Ernesto's violence against Jane Doe's #2 and #4 culminated in his brutal sexual and physical assault of Jane Doe #4 in July 2015.  PSR ¶¶ 23-24.

Throughout all of this violence, the defendant assisted her brothers in supervising and monitoring the victims to ensure that they continued to work in prostitution and make money for the organization.  PSR ¶¶ 10-11.  Indeed, the defendant's Queens apartment served as a base for the organization, and several of the victims were housed in both her apartment and other apartments located on the same floor within the same complex.  PSR ¶ 8.  In addition, the defendant supervised the victims' work in prostitution, including overseeing their prostitution work out of state, collecting their prostitution proceeds, accompanying the victims to get condoms and other necessities and to send prostitution proceeds and sending proceeds herself to members of the organization.  PSR ¶¶ 10, 12.  The defendant also sent money to members and associates of the organization in Mexico.  PSR ¶ 12.

In addition to supervising the victims, the defendant also pressured the victims to continue working in prostitution and to refrain from reporting the organization to law enforcement.  At least one victim described that, when she was living with the defendant, the defendant became angry if the victim was not working, telling the victim that prostitution was the reason that the victim had come to the United States.  Similarly, after Jane Doe #4 reported Ernesto's sexual and physical assault to law enforcement in 2015, the defendant's husband told Jane Doe #4 to reconsider because the defendant watched over Jane Doe #4's children.

    B.    <u>Procedural History</u>

On October 8, 2019, a grand jury returned an indictment charging the defendant with racketeering and racketeering conspiracy, in violation of 18 U.S.C. §§ 1962(c), 1962(d) and 1963, sex trafficking conspiracy, in violation of 18 U.S.C. § 1594(c), alien smuggling conspiracy, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i), interstate prostitution conspiracy, in violation of 18 U.S.C. §§ 371 and 2422(a), money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and distribution of prostitution proceeds, in violation of 18 U.S.C. §§ 1952(a)(1)(A) and 1952(b)(1).  The defendant was arrested on November 14, 2019 at her Queens apartment.

On October 11, 2022, the defendant pled guilty before Your Honor to the single count of a superseding information charging a Mann Act Violation, in violation of Title 18, United States Code, Section 2421(a).

II.     The Guidelines Calculation

The Guidelines estimate set forth in the parties' plea agreement is as follows:

| | |
|---|---:|
| Base Offense Level (§§ 2G1.1(a)(2), 2A3.1) | 30 |
| Plus: Offense Involved Fraud or Coercion (§ 2A3.1(b)(1))[1] | +4 |
| Minus: Minor Role Adjustment (§ 3B1.2(b)) | - 2 |
| Minus: Acceptance Points (§ 3B1.2(b)) | - 3 |
| Adjusted Offense Level | 28 |

Notably, the above calculation differs from Probation's estimate because the plea agreement: (i) does not include a two-point enhancement for bodily injury in connection with Ernesto's violent sexual and physical assault of Jane Doe #4; and (ii) does not include a two-point enhancement for vulnerable victim. See PSR ¶¶ 56-57. Although the government does not dispute the application of those enhancements here, for the reasons set forth below the government submits that a sentence within the Guidelines' range estimated in the parties' plea agreement is sufficient, but not greater than necessary, to achieve the goals of sentencing.

III.    Sentencing Law

The standards governing sentencing are well-established. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. Id. at 264; see also United States v. Kimbrough, 552 U.S. 85 (2007).

Although the Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress sought to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." Booker, 543 U.S. at 252; see also United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). The Guidelines range is

---

[1] Although the plea agreement incorrectly cites § 2G1.1(b)(1)) for this four-point enhancement, the government agrees with Probation that the enhancement applies under § 2A3.1(b)(1).

thus "the lodestar" that "anchor[s]" the district court's discretion. Molina-Martinez v. United States, 136 S. Ct. 1338, 1345-46 (2016) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

In light of Booker, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. See Crosby, 397 F.3d at 103. First, the Court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Id. at 112; see also United States v. Corsey, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court must consider whether a departure from that Guidelines range is appropriate. See Crosby, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. Id. at 113.

IV.   Analysis

The government respectfully submits that a sentence within the Guidelines range estimated in the parties' plea agreement of 78 to 97 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing, pursuant to the Section 3553(a) factors.

The nature and circumstances of the instant offense underscore the seriousness of the crime of conviction. The defendant helped operate a longstanding sex trafficking enterprise which recruited young women in Mexico, smuggled them into the United States, and subsequently forced them to engage in commercial sex. Although the defendant did not directly participate in the brutal acts of violence committed by her brothers and co-conspirators, she was not a passive member of the Hernandez-Velazquez Sex Trafficking Organization; to the contrary, her actions were instrumental to its success. Among other things, for years, the defendant kept watch over the victims; pressured the victims to work in prostitution and to refrain from reporting the organization to law enforcement; informed the victims how to engage

4

in prostitution; and collected the proceeds of their work in prostitution and sent portions of that money back to Mexico members of the Hernandez-Velazquez family.

As the defense recognizes in its sentencing submission, the trafficking of vulnerable women, made possible in part by the distribution of proceeds of sex trafficking enterprises, remains a significant issue that causes immeasurable and enduring harm to victims and their families, and affects the safety and security of members of our community as well as communities in Mexico. Accordingly, there is a significant and pressing need to deter others contemplating similar offenses. See Def. Sentencing Submission at 2-5; 18 U.S.C. §§ 3553(a)(2)(B)

However, the government also agrees with the defense that the circumstances surrounding the defendant's participation in the charged conspiracy are important for the Court's consideration. Among other things, the defense's submission details the defendant's difficult upbringing in Tenancingo, Mexico, the fact that the defendant did not herself engage in physical violence against the victims, and the defendant's incarceration at the MDC since 2019. The government agrees that these factors provide mitigation, which the Court should consider in fashioning an appropriate sentence.

V.     Conclusion

For the reasons set forth above, the government respectfully requests that the Court impose a sentence within the Guidelines range set out in the parties' plea agreement of 78 to 97 months' imprisonment with credit for time served.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Erin Reid
Assistant U.S. Attorney
(718) 254-7000

cc:     Clerk of the Court (WFK) (by ECF)
Peter Quijano, Esq. (by ECF)
Anna Sideris, Esq. (by ECF)
U.S. Probation Officer Erica Vest (by email)