UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,        :

                             :      **MEMORANDUM & ORDER**

         v.                 :      19-CR-306 (WFK)

                             :

ARCELIA HERNANDEZ-VELAZQUEZ,    :

                             :

        Defendant.        :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 25, 2023, Arcelia Hernandez-Velazquez ("Defendant") pled guilty to a single-count Superseding Information, charging her with a Mann Act Violation, in violation of 18 U.S.C. § 2421(a). Superseding Information ¶ 1, ECF No. 137; Plea Agreement ¶ 1, ECF No. 138. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to time served followed by five years of supervised release with both standard and special conditions. Defendant is also required to pay a mandatory special assessment of $100.00.

## I. Background

Agents of the United States Department of Homeland Security uncovered the instant offense as part of a larger investigation into the sex trafficking of women from Mexico into the United States. Presentence Investigation Report ("PSR") ¶ 3, ECF No. 158. The agents discovered Defendant assisted her three brothers, Ernesto, Hugo, and Giovanni Hernandez-Velazquez (hereinafter, the "Hernandez-Velazquez Trafficking Organization" or the "Organization"), who ran an operation smuggling young, vulnerable women from Mexico into the United States, forcing them to work in prostitution, and taking the money they earned. *Id.* ¶ 6. Between approximately 2001 and 2019, the Hernandez-Velazquez Trafficking Organization targeted women from poor and marginalized communities in Mexico who lacked adequate education. *Id.* ¶¶ 4-5. The Organization lured the young women, often under false promises of romantic relationships and financial support and without proper documentation, to the United

States, and then forced them into prostitution in at least 16 different states, including New York. *Id.* ¶¶ 7, 23.

Over the course of approximately 18 years, Defendant's brothers coerced the victims, including Jane Does # 1, 4, 5, and 6, into prostitution by using severe violence and emotional abuse. *Id.* ¶¶ 8, 16-18, 22-23, 28, 30. The brother's coercion tactics included, among other things: physical beatings; forced drug use and intoxication; threats of harm to the victims' families; forced abortions; kidnapping a victim's child; and horrific sexual violence. *Id.* As part of their prostitution business, the brothers would often set the price at $25 to $30 for 15 minutes of sex with the victims, who would see 20 to 30 clients per day. *Id.* ¶¶ 17, 22, 30.

As part of the Hernandez-Velazquez Trafficking Organization, Defendant assisted in the sex trafficking operation with her co-defendant brothers. *Id.* ¶ 15. Although Defendant did not have authority over her co-defendant brothers, she profited from their work and helped them maintain the Organization's sex trafficking operations by supervising and monitoring the victims to ensure they continued to engage in prostitution and earn money for the Organization. *Id.* ¶¶ 10-11. Defendant used her apartment in Queens, New York as a U.S. base for the Organization. *Id.* ¶ 8. Defendant housed several victims in her apartment and other apartments on the same floor of the building. *Id.* ¶ 8. In monitoring the victims, Defendant oversaw their work out-of-state, collected their prostitution proceeds, and accompanied them to buy condoms and other items used in connection with the trafficking. *Id.* ¶¶ 10-12. She also sent prostitution proceeds to the Organization's members and associates in Mexico. *Id.*

Defendant was closely involved with the Organization's victims, facilitating and pressuring victims to continue their prostitution and not to report to the police. *Id.* ¶ 23; Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 177. For example, soon

2

after Jane Doe #4 gave birth in December 2011, Defendant cared for Jane Doe #4's baby so Jane

Doe #4 could work six days a week in prostitution; Defendant would then take the money Jane

Doe #4 earned and send it to Ernesto Hernandez-Velazquez or other family in Mexico. PSR ¶

23. After Jane Doe #4 reported Ernesto Hernandez-Velazquez's sexual and physical assault to

the police, Defendant's partner told Jane Doe #4 to reconsider because Defendant watched over

Jane Doe #4's children. Gov't Mem. at 2. And as described by another victim, Defendant would

become angry if the victim was not working, admonishing her by saying prostitution was the

reason the victim was in the United States. *Id.*

On October 8, 2019, a grand jury returned a twelve-count Superseding Indictment against

Defendant and her three co-defendant brothers, specifically charging Defendant with the

following seven counts:  Racketeering, in violation of 18 U.S.C. §§ 1961(1), 1961(5), 1962(c),

and 1963 (Count 1); Racketeering Conspiracy, in violation of 18 U.S.C. §§ 1961(1), 1961(5),

1962(c)-(d), and 1963 (Count 2); Sex Trafficking Conspiracy, in violation of 18 U.S.C. §§

1591(a)(1)-(2) and 1594(c) (Count 3); Alien Smuggling Conspiracy, in violation of 8 U.S.C. §

1324(a)(1)(A)(ii)-(iv), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i) (Count 4); Interstate

Prostitution Conspiracy, in violation of 18 U.S.C. §§ 2422(a) and 371 (Count 5); Money

Laundering Conspiracy, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and

1956(h) (Count 11); and Distribution of Proceeds of a Prostitution Business, in violation of 18

U.S.C. § 1952(a)(1)(A) and 1952(b)(1) (Count 12). *See* Superseding Indictment, ECF No. 3.

The Superseding Indictment also contains criminal forfeiture allegations as to Counts 1 through

5 and Counts 11 and 12. *Id.* ¶¶ 48-59.

Defendant was arrested on November 14, 2019. PSR ¶ 38. Defendant waived her

*Miranda* rights and, during a post-arrest interview, she admitted to her participation in the instant

3

offense. *Id.* On April 25, 2023, Defendant pled guilty to a single-count Superseding Information, charging her with a Mann Act Violation in relation to Jane Doe #4, in violation of 18 U.S.C. § 2421(a). Superseding Information ¶ 1, ECF No. 137; Plea Agreement ¶ 1, ECF No. 138. Specifically, the Superseding Information charged Defendant, together with others, with knowingly and intentionally persuading, inducing, enticing, and coercing an individual, specifically Jane Doe #4, to travel in interstate and foreign commerce to engage in prostitution. Superseding Information ¶ 1. The Superseding Information also contains a criminal forfeiture allegation. *Id.* ¶¶ 2-3. As part of her plea agreement, Defendant agreed not appeal or otherwise challenge her conviction or sentence if the Court imposes a term of imprisonment at or below 108 months. Plea Agreement ¶ 4.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to

4

consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1.    Family and Personal Background

Defendant was born on September 12, 1973, in Tenancingo, Mexico to Ernesto Hernandez-Romero and Heriberta Velazquez-Guzman. PSR ¶ 72. Defendant, the oldest of five children, was raised in a lower-income household free from abuse. *Id.* Her father worked mostly in a factory, while her mother was a homemaker who worked odd jobs to support the family when the father was unemployed during factory strikes. *Id.*

Defendant entered the United States in approximately 2001. *Id.* ¶ 75. While in the United States, Defendant has only lived in New York. *Id.* Immigration records reflect Defendant is not a legal U.S. resident and faces immigration removal proceedings. *Id.*

Defendant has been in a relationship with Joel Hernandez since 1998. *Id.* ¶ 76. They have one daughter, age 18, who lives in Tenancingo, Mexico with Mr. Hernandez. *Id.* ¶ 77. Defendant's daughter is currently pregnant with Defendant's first grandchild. Defense Sentencing Memorandum ("Def. Mem.") at 10, ECF No. 176. Defendant's partner and daughter are aware of Defendant's arrest and remain supportive. *Id.* ¶¶ 76-77.

Defendant states she has a good relationship with all her siblings; however, she is only able to communicate with one of her brothers, an attorney in Mexico, because her three other brothers are in custody in connection with the instant offense. *Id.* ¶ 73. Defendant's father, who

5

is retired and lives in Tenancingo, is aware of Defendant's arrest and remains supportive. *Id.* ¶ 72. Defendant's mother passed away from COVID-19 while Defendant was in pre-trial incarceration for the instant offense. *Id.*; Def. Mem. at 17.

        2.      Educational and Employment History

In Mexico, Defendant attended school through middle school, at which point she left to work and support her mother in taking care of household responsibilities. PSR ¶¶ 83, 87. Upon arriving in the United States, Defendant first worked at a clothing factory. *Id.* ¶ 87. From 2005 until her instant arrest in 2019, Defendant worked as kitchen staff at a McDonald's in Manhattan. *Id.* ¶ 86. Defendant is still in touch with two of her former co-workers through phone calls and prison visits. Def. Mem. at 9.

        3.      Prior Convictions

Defendant has no prior criminal convictions or arrests. PSR ¶¶ 65-70.

        4.      Physical and Mental Health

Defendant is diabetic and has high blood pressure, for which she takes medication. *Id.* ¶ 80. Defendant underwent a cancer screening in October 2022 while at the Metropolitan Detention Center (the "MDC"); as noted *infra* Part III(D), defense counsel argues the MDC was delinquent in providing timely care following this screening, although Defendant has now been evaluated as healthy. PSR ¶ 80. Defendant has no history of mental health problems. *Id.* ¶ 81.

        5.      Substance Abuse

Defendant has no history of drug use and, prior to her arrest, only consumed alcohol socially once or twice a year during celebrations. *Id.* ¶ 81.

        6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved working with her brothers as part of a sex trafficking organization targeting young, vulnerable women from Mexico. *See supra* Part I. Although Defendant did not physically coerce the victims, she played a key role in overseeing the victims' work in prostitution. The Court's sentence justly punishes Defendant for her crimes and will deter others from engaging in similar acts.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to a single-count Superseding Information, charging her with a Mann Act Violation, in violation of 18 U.S.C. § 2421(a). Superseding Information ¶ 1, ECF No. 137; Plea Agreement ¶ 1, ECF No. 138. This offense carries a maximum term of imprisonment of 10 years and no minimum term of imprisonment. 18 U.S.C. § 2421(a). For supervised release, Defendant faces a minimum term of five years and a maximum term of life. 18 U.S.C. §

3583(k).  Defendant is eligible for a term of probation of not less than one nor more than five years.  18 U.S.C. § 3561(c)(1).  Unless extraordinary circumstances exist, one of the following must be imposed as a condition of probation:  a fine, restitution, or community service.  18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces other potential penalties.  Defendant faces a maximum fine of $250,000.00.  18 U.S.C. § 3571(b).  Defendant is subject to the provisions of the Justice for Victims of Trafficking Act of 2015 ("JVTA"), 18 U.S.C. § 3014, which instructs the Court to assess an amount of $5,000.00, per count, on any non-indigent person or entity convicted of an offense under 18 U.S.C. Chapters 77, 109A, 110, 117; or Section 274 of the Immigration and Nationality Act (8 U.S.C. § 1324).  *See* 18 U.S.C. § 3014.  Nonetheless, according to Probation, Defendant's financial profile indicates she is unable to pay a fine or the mandatory JVTA special assessment.  PSR ¶ 91.  Defendant also faces a mandatory special assessment of $100.00 per count.  18 U.S.C. § 3013.  Pursuant to 18 U.S.C. § 3663A, restitution in an amount to be determined shall be ordered in this case.  Following guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified, which is the case here.  However, the Court may hold an evidentiary hearing within 90 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5), to determine issues of restitution.

In addition to these penalties, Defendant is required to register as a sex offender.  PSR ¶¶ 104-107.

8

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guidelines provision for violations of 18 U.S.C. § 2421(a), as contained in the single-count Superseding Information, is U.S.S.G. §2G1.1. This Guideline requires a cross-reference to U.S.S.G. §2A3.1 because "the offense involved conduct described in 18 U.S.C. § 2241(a) or 18 U.S.C. § 2242." U.S.S.G. §2G1.1(c)(1). The base offense level under U.S.S.G. §2A3.1(a)(2) is 30. Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. The parties agree on these Guidelines calculations, but disagree as to the remaining Guidelines level adjustments. *See* PSR ¶¶ 39, 54; Gov't Mem. at 3; Def. Mem. at 22.

Probation calculates an additional two-level enhancement pursuant to U.S.S.G. §2A3.1(b)(4)(B) because Jane Doe #4 sustained serious bodily injury at the hands of Ernesto Hernandez-Velazquez's in furtherance of coercing her into prostitution for the Organization, and this injury, Probation asserts, should have been reasonably foreseeable to Defendant in connection with the trafficking. PSR ¶¶ 39, 56. Probation adds two levels pursuant to U.S.S.G. §3A1.1(b)(1) because Defendant knew or should have known Jane Doe #4 was a vulnerable victim based on the poor and marginalized community Jane Doe #4 came from and her lack of a proper education. *Id.* ¶¶ 39, 57. Probation adds four levels pursuant to U.S.S.G. §2A3.1(b)(1) because the offense involved conduct described in 18 U.S.C. § 2241(a), specifically theats against Jane Doe #4 regarding her son if she did not engage in prostitution. *Id.* ¶¶ 39, 55. Probation removes two levels for a minor role adjustment pursuant to U.S.S.G. §3B1.2(b)

because, although Defendant supervised the victims and collected prostitution proceeds, she had no authority over her co-defendants. *Id.* ¶ 40. Accordingly, Probation calculates a total offense level of 33. *Id.* ¶ 64.[1]

The Government does not dispute Probation's Guidelines calculations. Gov't Mem. at 3, 3 n.1. However, the Government argues for a downward variance to the Guidelines range estimated in the plea agreement, which the Government submits "is sufficient, but not greater than necessary, to achieve the goals of sentencing." Gov't Mem. at 3. The calculations in the plea agreement do not include the two-point enhancement for serious bodily injury, nor the two-point enhancement for a vulnerable victim. Plea Agreement ¶ 2; *see also* Gov't Mem. at 3. Like Probation's calculations, the plea agreement relies on a base offense level of 30, the four-point enhancement for an offense involving fraud or coercion, the two-point reduction for a minor role, and the three-point reduction for timely acceptance of responsibility. Plea Agreement ¶ 2. The plea agreement also contemplates an additional one-point global plea reduction if Defendant, Hugo Hernandez-Velazquez, and Ernesto Hernandez-Velazquez pled guilty on or before May 4, 2023, which all three defendants satisfied. *See* Plea Agreement ¶¶ 2, 8 (signed April 25, 2023); *see also* Hugo Plea Agreement ¶¶ 2, 9, ECF No. 139 (signed April 27, 2023); Ernesto Plea Agreement ¶¶ 2, 9, ECF No. 141 (signed May 4, 2023). Altogether, the plea agreement contemplates a total offense level—including the plea reductions—of 28. Plea Agreement ¶ 2.

Defendant disagrees with Probation's Guidelines calculations, arguing Probation's Guidelines calculations are "at odds with" the Guidelines estimated in the plea agreement. Def.

---

[1] Probation also submitted an addendum advising the Court, based on information received from the Government, that Defendant is eligible for an additional one level global plea reduction pursuant to U.S.S.G. §5K2.0 (Policy Statement), which would lower his offense level to 32. PSR Addendum at 2, ECF No. 178; *see also* Plea Agreement ¶ 8. However, Probation does not affirmatively amend its Guidelines calculations or offense level, rather, the addendum amends the PSR to include this reduction as a potential basis for a downward variance or departure. *See* PSR Addendum at 2; *see also infra* Part III(E).

Mem. at 22-23. As such, Defendant objects to Probation's application of the two-level

enhancement for serious bodily injury, the two-level enhancement for a vulnerable victim, and

the four-level enhancement for conduct described in 18 U.S.C. §2241(a). *See id.* at 23 (objecting

to PSR ¶¶ 55-57); Defense Sentencing Supplement ("Def. Mem. Suppl.") at 1-2, ECF No. 179.

Defendant argues she should receive a four-level, rather than two-level, reduction

pursuant to U.S.S.G. §3B1.2(b) because her mitigating role is better characterized as minimal,

not minor. Def. Mem. at 22; *see also* Plea Agreement ¶ 2 (stating "defendant reserves the right

to argue at sentencing that she was a minimal participant under § 3B1.2(a) rather than a minor

participant under § 3B1.2(b)"). The Sentencing Guidelines state a "minimal role" refers to

"defendants who are plainly among the least culpable of those involved in the conduct of a

group." Application Note 4 to U.S.S.G. §3B1.2. Under this Guidelines provision, "the

defendant's lack of knowledge or understanding of the scope and structure of the enterprise and

of the activities of others is indicative of a role as minimal participant." *Id.* The Second Circuit

held courts evaluate a defendant's role by considering factors such as "the nature of the

defendant's relationship to other participants, the importance of the defendant's actions to the

success of the venture, and the defendant's awareness of the nature and scope of the criminal

enterprise." *United States v. Yu*, 285 F.3d 192, 200 (2d Cir. 2002) (internal quotation marks

omitted). Based on the Second Circuit's standard in *Yu*, Defendant argues "the totality of the

circumstances" shows Defendant's "participation in her brothers' prostitution was truly

minimal." Def. Mem. at 22. In support of this argument, Defendant cites a letter from her sister-

in-law, who writes "Arcelia Hernandez is a great person as a woman and as a mother. It seems

unfair to me she is spending all this time deprived of her freedom for what she did not commit

and being unfairly accused." *Id.* at 23. Defendant argues this letter "attests that Arcelia was

11

neither controlling nor aggressive in her treatment of" her sister-in-law and is the "best argument" for why she should receive a minimal role designation. *Id.* at 22-23.

Defendant further argues for the one-level reduction for a global plea resolution as contemplated in the plea agreement. *See* Def. Mem. at 22, 23.

Defendant objects to Probation's inclusion of enhancements for serious bodily injury and vulnerable victim because they are inapplicable and were not included in the plea agreement. *See* Def. Mem. Suppl. at 1-2; *see generally* Def. Mem. at 22-23. Regarding the enhancement for serious bodily injury, Defendant argues she did not and should not have foreseen that Ernesto Hernandez-Velazquez would use violence against Jane Doe #4 in connection with the trafficking. Def. Mem. Suppl. at 1-2. Regarding the vulnerable victim enhancement, Defendant argues she did not know nor should have known Jane Doe #4 was vulnerable because Defendant is also from a poor community, lacked proper education, and worked at McDonald's; therefore, Defendant asserts she is unable to objectively evaluate Jane Doe #4, who Defendant saw as an equal. *Id.* at 2.

Defendant objects to the four-level enhancement pursuant to U.S.S.G. §2A3.1(b)(1) utilized by Probation, arguing it is both inapplicable and not contemplated in the parties' plea agreement. *Id.* at 1; *see also* Def. Mem. at 23 (objecting to PSR ¶ 55). The U.S.S.G. §2A3.1(b)(1) enhancement applies when, as relevant here, a defendant "caus[es] another person to engage in[] a sexual act with another person by[] . . . threatening or placing the victim in fear that any person will be subject to . . . kidnapping." Application Note 2(A) to U.S.S.G. §2A3.1. In particular, Defendant argues this enhancement does not apply because she was close with Jane Doe #4's children, did not force Jane Doe #4 to leave her child in Defendant's care to engage in prostitution, and Jane Doe #4 welcomed Defendant's help. Def. Mem. at 23 (explaining

12

objections to PSR ¶¶ 24 and 39). Notably, Defendant stipulated to a separate but similar four-level enhancement in the plea agreement. *See* Plea Agreement ¶ 2.[2] As such, the objection in Defendant's supplemental memorandum does not alter her total offense level.

Altogether, Defendant calculates a total offense level of 26. Def. Mem. at 22-23; Def. Mem. Suppl. at 2.

As noted previously, Defendant has no prior criminal convictions. *See supra* Part III(A)(3). As a result, Defendant has a criminal history score of zero. PSR ¶¶ 65-70. This results in a criminal history category of I. U.S.S.G. Ch. 5 Pt. A. All parties agree with this calculation. PSR ¶ 67; Def. Mem. at 23; *see generally* Gov't Mem. at 4.

The parties disagree as to the correct Guidelines range. Based on a total offense level of 33 and a criminal history category of I, Probation calculates an applicable Guidelines range of 135 to 168 months of incarceration. *See* PSR ¶ 93. However, Probation states the restricted Guidelines range is 120 months because the statutorily authorized maximum sentence is 10 years pursuant to U.S.S.G. §5G1.1(c)(1). *Id.* The Government does not dispute Probation's calculations, but states it recommends a sentence within the Guidelines outlined in the plea agreement. *See* Gov't Mem. at 3-4. The plea agreement's Guidelines calculations contemplate a total offense level of 28 and a criminal history category of I, resulting in a Guidelines range of 78 to 97 months of incarceration. *Id.*; Plea Agreement ¶ 2. Based on a total offense level of 26 and a criminal history category of I, Defendant calculates an applicable Guidelines range of 63 to 78 months of incarceration. *See* Def. Mem. at 23; Def. Mem. Suppl. at 2.

---

[2] In her initial sentencing submission, Defendant did not argue against including a similar four-level enhancement in her Guidelines because that enhancement was included in the plea agreement and she understood "the parties [would] honor" the plea agreement. Def. Mem. at 22 n.4; *see also* Def. Mem. at 23 (objecting to PSR ¶¶ 39, 60, 93).

The Court adopts the Guidelines calculations contemplated in the plea agreement including the one-level global plea reduction and with the correction that the four-level enhancement applies pursuant to U.S.S.G. §2A3.1(b)(1), not U.S.S.G. §2G1.1(b)(1).  Therefore, the Court calculates a total offense level of 28, which, coupled with a criminal history category of I, results in an applicable Guidelines range of 78 to 97 months of imprisonment.

That said, the parties' recommendations as to an appropriate sentence vary.

Probation recommends a sentence of 120 months of custody—which is below Probation's calculated Guidelines range but restricted by the 10-year statutory maximum— followed by five years of supervised release with special conditions.  Probation Recommendation at 1, ECF No. 158-1; *see also* Addendum to the PSR at 2.  Probation also recommends payment of the $100.00 special assessment.  Probation Recommendation at 1.  Probation does not recommend the Court impose a fine or the JVTA special assessment, as Defendant appears unable to pay.  *Id.* at 1-2.

Probation argues a sentence of 120 months is warranted given Defendant's understanding of, role in, and direct profit from the sex trafficking scheme.  *Id.* at 1-2.  In particular, Probation notes Defendant's role in overseeing the prostitution work of the victims, collecting their proceeds, and sending the money to Organization members in Mexico.  *Id.*  Probation emphasizes Defendant used her many interpersonal relationships with the victims to ensure they adhered to her co-defendant brothers' instructions and maintained the Organization's sex trafficking business.  *Id.* at 3.

Defense counsel requests a below-Guidelines sentence of time served to be followed by mandatory deportation or supervised release.  Def. Mem. at 1, 23, 24.  Defense counsel argues such a sentence is warranted given Defendant's mitigating role as a minimal participant in the

14

instant offense as compared to her co-defendants, her personal history, the conditions at the MDC, and the period of detention she will spend in immigration custody awaiting deportation. *Id.* at 25.

In arguing Defendant's role was minimal, defense counsel objects to Probation's and the Government's characterization of Defendant as supervising and monitoring the victims. Def. Mem. at 23; *see also supra* Part III(D) at 11-12. Defense counsel concedes Defendant "did admonish the prostitutes when they acted defiant or disrespectful to her brothers," but she "certainly never compelled them to work." Def. Mem. at 24. According to defense counsel, Defendant's help to her brothers in managing and administering their business "was chiefly in assisting to wire money and helping to arragne [sic] a taxi." *Id.* at 24-25. Defense counsel argues "any pressure on a sex worker to turn over money against her will" was "from Arcelia's brothers, not from Arcelia." *Id.* at 25. Defense counsel states Defendant understands how the victims could view her as intimidating based on her relationship to her brothers, but defense counsel argues Defendant "never meant to contribute to their oppression or abuse." *Id.*

Defense counsel emphasizes Defendant's personal history, explaining as "the only daughter of a traditional Mexican family, Arcelia was reared by strict, religious parents who maintained conventional family roles." *Id.* at 24. Growing up in Tlaxcala, Mexico—the "sex-trafficking capital of Mexico"—Defendant was warned by her parents never "to become a prostitute." *Id.* at 2, 4. Defendant's strict parents taught her "allegiance to the family was of the utmost importance," which included a duty to "care for her brothers but also defer to them and men in general." *Id.* at 24. Defense counsel explains, after Defendant moved to New York, she became aware her brothers were involved in the prostitution business. *Id.* at 10-13. Defense counsel states Defendant's family in Mexico needed money, so "at her brothers' direction, she

would accompany [the victims] to a local Western Union office, and help them send remittances back to Mexico." *Id.* "Absent her devotion to [her brothers], she would never have become involved in any way in" the sex trafficking scheme, defense counsel argues. *Id.* at 24.

Defense counsel states Defendant has faced "abysmal" conditions over the last five years at the MDC. *Id.* at 17. During the pandemic in 2020 and 2021, Defendant faced frequent lockdowns and added restrictions for prolonged periods. *Id.* at 17-18. Defense counsel also states Defendant received egregiously slow medical care, if any, at the MDC. *Id.* at 18-19. To illustrate this point, defense counsel describes instances where Defendant: (1) self-treated a months-long painful toothache due to never receiving proper dental treatment in prison; (2) waited months for a follow-up appointment after receiving concerning initial results from a cancer-screening; and (3) received no response from the MDC after she and her fellow female inmates signed a petition alerting the Bureau of Prisons of unhealthy conditions after Defendant and others suffered painful sores and welts from cockroaches. *Id.* at 18-19. Defense counsel cites numerous decisions by judges in the Eastern and Southern Districts of New York granting below-Guidelines sentences for detained defendants due to "the MDC's extremely compromised conditions of pretrial detention." *Id.* at 10 (listing cases); *see also* Ex. B to Def. Mem. at 40-42, ECF No. 176-1 (letter from MDC correctional officers' union describing the facility's severe staffing shortage).

This Court has read and considered the letters written by loved ones and supporters, including certain MDC staff, Exs. C-F to Def. Mem. at 39-51, ECF No. 176-1. The letters describe Defendant as someone with a strong work ethic, devotion to her faith, and adoration for her nephews. *Id.* The Court appreciates what Defendant's advocates have said on her behalf. The Court has also reviewed the dozens of Certificates of Completion exhibited to Defendant's

submission. *See* Ex. A to Def. Mem. at 1-38.  At the sentencing hearing, defense counsel also

introduced as exhibits two items which Defendant crocheted, a skill she learned at the MDC and

intends to use for a business after she is released.  *See* Def. Exs. G and H.

      The Government recommends a downward variance to a sentence within the plea

agreement's estimated Guidelines range of 78 to 97 months of imprisonment.  Gov't Mem. at 1,

4, 5.  The Government notes the parties' plea agreement calculates this same applicable range,

which "is sufficient, but not greater than necessary, to achieve the goals of sentencing, pursuant

to the Section 3553(a) factors."  *Id.* at 4.

      The Government argues a sentence within the plea agreement's Guidelines range of 78 to

97 months of custody is warranted because of the "seriousness of the crime of conviction," in

which Defendant helped a "longstanding sex trafficking enterprise."  *Id.* at 4.  The Government

recognizes Defendant "did not directly participate" in her brothers' brutal violence; however, the

Government argues Defendant was "not a passive member of the Hernandez-Velazquez Sex

Trafficking Organization."  *Id.*  Rather, Defendant was "instrumental" to the Organization's

success for years by watching over the victims; pressuring them to work in prostitution and

refrain from reporting to law enforcement; informing victims how to engage in prostitution; and

collecting their proceeds and sending the money back to Mexico to Hernandez-Velazquez family

members.  *Id.* at 4-5.

      The Government also argues such a sentence is necessary for the purposes of general

deterrence.  *Id.* at 5.  Trafficking vulnerable women, according to the Government, is "made

possible in part by the distribution of proceeds of sex trafficking enterprises."  *Id.*  Such

trafficking "causes immeasurable and enduring harm to victims and their families, and affects the

safety and security of members of our community as well as communities in Mexico."  *Id.*

Lastly, the Government states it agrees with defense counsel "that the circumstances surrounding the defendant's participation in the charged conspiracy are important for the Court's consideration." *Id.* In particular, the Government agrees with defense counsel in arguing the Court should consider "defendant's difficult upbringing in Tenancingo, Mexico, the fact that the defendant did not herself engage in physical violence against the victims, and the defendant's incarceration at the MDC since 2019." *Id.*

The Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation states the one-level global plea reduction may be applied in the instant case, pursuant to the Policy Statement on Grounds for Departure in U.S.S.G. §5K2.2. Addendum to the PSR at 2, ECF No. 178. According to Probation's Guidelines calculations, if the Court applies this reduction, Defendant would have a total offense level of 32. *Id.* Coupled with a criminal history category of I, this would result in an advisory Guidelines range of 121 to 151 months of imprisonment. *Id.* However, the 10-year statutory maximum would still restrict the Guideline range to 120 months, pursuant to U.S.S.G. §5G1.1(c)(1). *Id.* The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of time served to be followed by five years of supervised release with both standard and special conditions. The Court also orders a $100.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine or a JVTA special assessment because Defendant appears unable to pay either.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 158, and the Addendum thereto, ECF No. 178, barring any errors contained therein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

19

Dated: November 21, 2024
Brooklyn, New York